Slip Op. 11-146

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                    :
SINCE HARDWARE (GUANGZHOU)          :
CO., LTD.,                          :
                                    :
                Plaintiff,          :
                                    :
        v.                          : Court No. 09-00123
                                    :
UNITED STATES,                      :
                                    :
                Defendant,          :
                                    :
        and                         :
                                    :
HOME PRODUCTS INTERNATIONAL,        :
LTD.,                               :
                                    :
                Def.-Int.           :
_____:

OPINION AND ORDER

[Plaintiff's motion for judgment on the agency record sustained, in part, and the case is remanded.]

Dated: November 29, 2011

    *Dorsey & Whitney LLP* (*William E. Perry*), for plaintiff.

    *Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David S. Silverbrand* and *Carrie A. Dunsmore*); Office of Chief Counsel for Import Administration, United States Department of Commerce (*Thomas M. Beline*), of counsel, for defendant.

    *Blank Rome LLP* (*Frederick L. Ikenson*, *Peggy A. Clarke*, and *Larry Hampel*), for defendant-intervenor.

Eaton, Judge:  Before the court is the Department of Commerce's (the "Department" or "Commerce") Final Results of Redetermination Pursuant to Remand, dated February 17, 2011 ("Remand Results").  The matter was remanded by the court following plaintiff Since Hardware (Guandozhou) Co., Ltd.'s ("Since Hardware" or "plaintiff") motion for judgment on the agency record pursuant to USCIT R. 56.2, *Since Hardware (Guangzhou) Co. v. United States,* 34 CIT \_\_, \_\_, Slip Op. 10-108 at 22 (Sept. 27, 2010) (not reported in the Federal Supplement) ("*Since Hardware I*"), which challenged Commerce's final results of the Third Administrative Review of the antidumping order on ironing boards from the People's Republic of China (the "PRC") for the period of review ("POR") August 1, 2006 through July 31, 2007, Floor Standing Metal-Top Ironing Tables and Certain Parts Thereof from the PRC, 74 Fed. Reg. 11,086 (Dep't of Commerce Mar. 16, 2009) (final results) and the accompanying Issues and Decision Memorandum ("Issues & Dec. Mem.") (collectively, the "Final Results").

In the Final Results, the Department found that Since Hardware's questionnaire responses concerning its factors of production were so unreliable that the application of adverse facts available ("AFA") under 19 U.S.C. § 1677e(b)(2006) was warranted, not only for determining the company's dumping margin, but also in determining whether it operated free from

the control of the PRC government.[1]  Based on this determination,

the Department concluded that Since Hardware was not entitled to

a company-specific rate and, therefore, it was assigned the PRC-

wide rate of 157.68%.[2]

In its motion for judgment on the agency record, plaintiff

challenged, inter alia, the Department's findings with respect

to its separate-rate status.  On this issue, the court held that

---

[1]     The court sustained Commerce's determination to apply
AFA with regard to Since Hardware's factors of production
because "it is clear that the Department acted reasonably in
determining that it could not rely on the material the company
placed on the record relating to the country of origin and
valuation of the factors of production."  *Since Hardware I,* 34
CIT at __, Slip Op. 10-108 at 20.


[2]     Whether Since Hardware is entitled to have a company-
specific rate assigned to it is an issue because the company
operates in the PRC, which is a non-market economy country.  A
non-market economy country includes "any foreign country that
[Commerce] determines does not operate on market principles of
cost or pricing structures, so that sales of merchandise in such
country do not reflect the fair value of the merchandise."  19
U.S.C. § 1677(18)(A); *Shandong Huarong Gen. Group Corp. v.
United States*, 28 CIT 1624, 1625 n.1 (2004) (not reported in the
Federal Supplement).  The PRC has been determined to be a non-
market economy country and has been treated as such in all past
antidumping investigations.  *Zhejiang Native Produce & Animal
By-Products Imp. & Exp. Corp. v. United States*, 27 CIT 1827,
1834 n.14 (2003) (not reported in the Federal Supplement)
(citations omitted).


When an exporter operates in a non-market economy country,
Commerce presumes it to be part of a country-wide entity
controlled by that country's government.  If that exporter can
establish that it is free from government control, however, it
is entitled to have its own "separate rate" based on its own
factors of production and sales data, or if AFA is applicable,
by an acceptable method.

Commerce's decision to deny Since Hardware separate-rate status

was unsupported by substantial evidence and contrary to law

because

> [a]n examination of the record . . . reveals that none
> of the unreliable information submitted by the company
> is relevant to the question of government control. . .
> . [T]he evidence that the company was not controlled
> by the government (e.g., documentation substantiating
> its claims that it is a wholly foreign-owned
> enterprise registered in the PRC . . . and evidence
> regarding de facto control over its export activities)
> is far removed from questions relating to the origin
> of the factors of production and their cost.

*See Since Hardware I*, 34 CIT at __, Slip. Op. 10-108 at 15.

Accordingly, on remand, the Department was instructed to

"reexamine the record to again determine if Since Hardware has

produced evidence sufficient to qualify for application of a

separate rate" in the assignment of its antidumping duty rate.

*Id.* at 22.

On remand, Commerce again declined to evaluate the merits

of plaintiff's evidence that it was not subject to government

control.  Rather, the Department determined that Since Hardware

failed to meet its burden of proving its independence from

government control.  Commerce reached this determination by

concluding that the company's responses to Commerce's separate-

rate questionnaires could only be verified by reviewing Since

Hardware's accounting records, which had previously been

determined to be unreliable.  Remand Results at 2.  In other

words, Commerce found that plaintiff's separate-rate questionnaire responses were unverifiable and, therefore, could not be considered as evidence. Based on this finding, Commerce determined that plaintiff had failed to establish that it was entitled to a separate rate, and retained its determination to assign the company the PRC-wide rate of 157.68%.

Plaintiff filed its comments challenging the Remand Results on March 31, 2011. *See generally Pl.'s Objs. to Rem. Res.* ("Pl.'s Cmnts."). The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i). For the reasons stated below, the matter is remanded to Commerce with instructions.

STANDARD OF REVIEW

The standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i), which provides, in relevant part, that the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." Accordingly, "Commerce's determinations of fact must be sustained unless unsupported by substantial evidence in the record and its legal conclusions must be sustained unless not in accordance with law." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1357 (Fed. Cir. 2006).

DISCUSSION

I.  Remand Results

In the Remand Results, Commerce noted that Since Hardware bears the burden of establishing its entitlement to a separate rate by demonstrating both de jure and de facto independence from the Chinese government.  *See Sigma Corp. v. United States,* 117 F.3d 1401, 1405 (Fed. Cir. 1997).  In determining whether de jure independence is established, Commerce looks for:  "(1) [a]n absence of restrictive stipulations associated with an individual exporter's business and export license; (2) any legislative enactments decentralizing control of companies; or (3) any other formal measures by the government decentralizing control of companies."  *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 25 CIT 1150, 1172, 178 F. Supp. 2d 1305, 1329 (2001) (citations omitted); Remand Results at 4.

The Department considers four factors in determining de facto independence:

> (1) [w]hether the export prices are set by, or are subject to the approval of, a governmental authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses.

*Coal. for the Pres. of Am. Brake Drum & Rotor Aftermarket Mfrs.*
*v. United States*, 28 CIT 447, 457; 318 F. Supp. 2d 1305, 1313
(2004) (citations omitted); Remand Results at 4.

On remand, Commerce determined that Since Hardware
established de jure independence[3] because it "provided a copy of
its business license issued by the Guangzhou Municipal
Industrial and Commercial Administration, and relied upon the
Foreign Trade Law which establishes a decentralization of
government control over business operations."  Remand Results at
5.

The Department further determined, however, that the
company failed to establish its de facto independence from the
PRC government because its separate-rate claim necessarily
relied on the same accounting records that the Department found
to be undependable in the Final Results.  According to Commerce:

---

[3]      In its Draft Results of Redetermination, the
Department determined that Since Hardware had not established de
jure independence because it did not disclose a "change" in its
ownership structure, and this non-disclosure precluded the
Department from further inquiring into the nature of the
company's ownership.  Commerce, therefore, "conclude[d] that
this contradiction in Since Hardware's responses, by itself,
renders Since Hardware's separate rate portion of its
questionnaire response unreliable for granting Since Hardware a
separate rate."  Draft Results of Redetermination at 7.
Following receipt of Since Hardware's comments to the Draft
Results, however, the Department acknowledged that, as a result
of an oversight, it had failed to see that Since Hardware's
responses to the Department's questionnaires concerning the
company's ownership structure were consistent and, therefore,
they supported a conclusion that it had established de jure
independence.  Remand Results at 2.

> [t]he respondent's books and records, including accounting documentation, especially in those cases in which the respondent cites to its books and records to support its claimed independence, are tied to the determination regarding separate rate eligibility. The Department previously found, and the court affirmed, that Since Hardware's submitted accounting ledgers included unreliable data related to market economy purchases.

Remand Results at 4. Thus, the Department takes the position that it was required to reject the company's answers to the separate rate questionnaires because they were unverifiable since they were based on the discredited records.

Specifically, the Department states that it "examined the relevance of the books and records [found unreliable in the Final Results] to the separate rate issue with respect to the statements made by Since Hardware that supports a de facto determination. In examining this question, we find a critical nexus between certain statements made by Since Hardware and the company's books and records." Remand Results at 6. Commerce found the "critical nexus" to be that plaintiff's questionnaire responses concerning the first and fourth factors in the de facto independence analysis ((1) the setting of export prices and (4) the retention of proceeds and disposition of profits or financing of losses) could only be verified by examining the

company's accounting records, which had already been determined to be unreliable.[4]  Remand Results at 6.

In reaching this conclusion, the Department relied solely on the verification procedures used in connection with Since Hardware's separate rate application during the First Administrative Review.[5]  After placing its verification report from the First Administrative Review on the record, the Department found that the verification procedures used in that review required it to examine Since Hardware's accounting records to verify the company's claim that it set its own sales prices and independently determined how to dispose of its profits or finance its losses.  *See* Remand Results at 14 ("As detailed . . . in the Department's verification report [from the First Administrative Review], the Department verifiers conduct

---

[4]     The Department determined that Since Hardware's responses regarding the second and third de facto independence factors (authority to negotiate and sign contracts; and autonomy from government in selection of management) supported a conclusion of independence.

[5]     The First Administrative Review covered the POR February 3, 2004 through July 31, 2005.  Plaintiff argues that the Department is required to evaluate each segment of the proceedings separately and, thus, it was improper to use evidence from prior segments to support its conclusion in this review.  Commerce, however, merely relied on its prior verification report as the source of its verification procedures, rather than evidence of Since Hardware's lack of independence from the PRC government.  Accordingly, the Department's mere reference to that verification report is not unlawful.

financial traces through each aspect of the respondent's accounting system.").

With regard to the "setting of export price" factor, in this Third Administrative Review, Since Hardware answered the Department's questionnaires, in part, by stating that it "based prices for its . . . U.S. sales . . . on the production costs, taking into consideration overhead and administrative expenses, profit and other expenses incurred during the ordinary course of business."  Since Hardware's Section A Questionnaire Responses, dated Oct. 25, 2007 (C.R. Doc. 2) (P.R. Doc. 15) ("Section A Questionnaire Response") at 6.  Stated differently, Since Hardware maintained that, at least in part, it set export prices based on its production costs and profit objectives.

Commerce found that "[b]ecause Since Hardware's Section A questionnaire response implicates its production costs and profit in making export pricing decisions, the Department examines certain accounting records during a verification of a respondent."  Remand Results at 7.  The Department went on to find that "[t]he separate rate response given . . . cites to specific accounting ledgers and implicates the production costs ledger in the accounting records.  Under accounting principles, and as evidenced by Department verification, these ledger accounts must tie into the general ledger, which in turn ties into the financial records."  Remand Results at 8.

As has been noted, in the Final Results the Department found that these ledgers were unreliable because Since Hardware had misrepresented the source and cost of several of its manufacturing inputs. In *Since Hardware I*, the court sustained the determination that the company's accounting records were unreliable. *See Since Hardware I*, 34 CIT at __, Slip Op. 10-108 at 20. Thus, Commerce determined that the company's questionnaire responses concerning how it set its export prices could not support a finding of de facto independence because "[w]ithout reliable accounting ledgers, the Department cannot verify this prong of the separate rates [sic] test." Remand Results at 8.

With regard to the fourth factor, concerning the company's retention and use of sales proceeds, Since Hardware responded, in part, to the Department's questionnaire by stating that it "deposit[s] export earnings into [its] respective bank accounts," and "[t]he board of directors determines the disposition of profits." Section A Questionnaire Response at 8-9. When asked whether it is required to exchange its foreign currency for domestic currency, the company responded that it was not, but rather it "use[s] foreign currency earned on the sale of subject merchandise to fund its operational expenses." Section A Questionnaire Response at 9-10. In other words, as part of its response to the Department's questionnaires, Since

Hardware claimed that it retained the profits it earned on export sales, which it either deposited in bank accounts or used to fund its operations.

As with the submissions regarding the first factor, the Department found that it "is unable to rely upon the statements concerning export proceeds in Since Hardware's separate rate application because such statements are unverifiable on the ground that they rest on Since Hardware's accounting documentation." Remand Results at 10.

As a result, the Department ultimately concluded that:

> Since Hardware's responses related to its export sales process and its disposition of export proceeds directly implicates its accounting system. As demonstrated through reference to Since Hardware's verification from the first administrative review, the Department verifies certain accounting ledgers and traces a sample sale through to the general ledger. Each sub-ledger is tied to the general ledger, and Since Hardware cannot demonstrate that the unreliable accounting documents are separate from its general operating ledgers. Therefore, the Department cannot conclude through verifiable evidence that Since Hardware sets prices or retains revenue as it explained in its Section A questionnaire response.

Remand Results at 11.

II.  Analysis

Plaintiff argues that Commerce's determination that it failed to meet its burden of establishing its de facto independence was unsupported by substantial evidence and unlawful.  Since Hardware asserts that the Department has not

demonstrated that the integrity of its accounting system necessarily impacted the determination of how it set its prices or disposed of its sales proceeds.  In other words, plaintiff insists that reference to its unreliable accounting records was not required for a determination of whether the company is subject to government control because there is other sufficient and verifiable material on the record from which this determination could have been made.  According to plaintiff, that material includes evidence of "contractual authority and independent decision-making, which could be shown by reference to communications between a company and the government."  Pl.'s Cmnts. 10.

The court finds merit in plaintiff's argument.  As a result, as explained below, the Department's determination is remanded for two related reasons.  First, by failing to consider all of the record evidence relating to the company's separate-rate application, Commerce did not adhere to the court's remand instructions.  Second, Commerce's determination that Since Hardware's de facto independence questionnaire responses were unverifiable was neither supported by substantial evidence nor in accordance with law.

A. By Not Considering Since Hardware's Evidence of Its De Facto Independence, Commerce Failed to Comply with the Court's Remand Order

In the Remand Order, the Department was instructed to consider the evidence on the record concerning Since Hardware's independence from the PRC government. *See Since Hardware I*, 34 CIT at __, Slip Op. 10-108 at 22-23 ("[O]n remand Commerce shall reexamine the record to determine again if Since Hardware has produced evidence sufficient to qualify for application of a separate rate."). Although Since Hardware made reference to its costs of production in responding to Commerce's questionnaires concerning how it set its export prices, its answers did not end there. Much of plaintiff's claim was based on its representation that its export prices were determined through negotiations with its customers. In support of its assertion, the company submitted direct evidence of these negotiations.

For example, Since Hardware provided email correspondence with its customers detailing the negotiations that took place. *See* Since Hardware's Supplemental Questionnaire Responses dated May 20, 2008 ("Supplemental Questionnaire Response") (C.R. Doc. 11) (P.R. Doc. 41) at Exs. 7, 14; Section A Questionnaire Response at Ex. 7. In addition, the company provided purchase orders, invoices, and packing slips, showing the terms of sale, including price. *See* Supplemental Questionnaire Responses at Ex. 11; Section A Questionnaire Response at Ex. 7. These

materials tend to support Since Hardware's claim that its prices were the product of customer negotiation, rather than government oversight or involvement.

Although this evidence was on the record, the Department failed to consider it.  Rather, Commerce found that Since Hardware's separate-rate questionnaire responses could only be verified by looking at the company's unreliable accounting records.  The additional materials submitted by plaintiff, however, appear to demonstrate that, independent of its accounting records, there is evidence that it set its export prices without government oversight or direction.

In responding to the Department's questionnaires concerning the disposition of its sales proceeds, Since Hardware claimed that they were deposited in the company's bank accounts and used to fund operations, as directed by the company's management. *See, e.g.,* Section A Questionnaire Response at 8-9.  During the review, at the Department's request, Since Hardware provided evidence showing its U.S. sales, including a "sales reconciliation," which ostensibly demonstrated that the company identified all of its U.S. sales.  *See* Since Hardware's Section C Questionnaire Response and Sales Reconciliation, Nov. 13, 2007 ("Section C Questionnaire Response").  In response to supplemental questionnaires, the company also provided revised sales information, including updates concerning the receipt of

payments from customers who ordered and received merchandise during the POR, but remitted payment thereafter. *See* Supplemental Questionnaire Response at 11, Ex. 16. Absent from the record was any evidence that plaintiff disposed of its sales proceeds at the direction of the PRC government.

It is worth noting that the Department did not request any specific evidence from Since Hardware to support its claims regarding its independent disposition of proceeds in its supplemental questionnaires. Rather, Commerce's follow-up questionnaires focused exclusively on the accuracy of the company's sales data, suggesting that the Department was concerned with ensuring that all of the company's U.S. sales were accounted for, and not with who directed how the sales proceeds were disposed of. *See, e.g.,* Supplemental Questionnaire, A-570-888 (Dep't of Commerce Apr. 18, 2008) at 6, 8-11. Thus, despite the opportunity to do so, Commerce did not further explore the company's claim that it disposed of its sales proceeds at the sole direction of its management.

Because, on remand, the Department limited its analysis to a finding that the unreliability of plaintiff's accounting records prevented verification, it did not examine or discuss any of the record evidence that might have indicated that the company retained its sales proceeds and made independent decisions regarding the disposition of its profits or the

financing of its losses.  On remand, however, Commerce was instructed to "reexamine the record to again determine if Since Hardware has produced evidence sufficient to qualify for application of a separate rate."  *Since Hardware I*, 34 CIT at __, Slip Op. 10-108 at 22.  Furthermore, the court instructed that "Commerce may not assume that the portion of the record relating to independence from government control has been impacted by Since Hardware's questionnaire responses to unrelated matters."  *Id.* at 22-23.  Commerce, in the Remand Results, failed to follow these instructions by continuing to assume that Since Hardware's unreliable cost of production accounting records prevented any evaluation of whether the company was entitled to a separate rate.

"The failure of an agency to candidly comply with the instructions in a remand order not only shows a disregard for the issuing court's authority, but it is also an act that is contrary to law."  *NSK Corp. v. United States*, 33 CIT __, __, 637 F. Supp. 2d 1311, 1318 (2009) (citing *Smith Corona Corp. v. United States*, 915 F.2d 683, 688 (Fed. Cir. 1990)).  For this reason alone, the Remand Results must be remanded.

B. Commerce's Determination That Plaintiff's Separate-Rate
   Questionnaire Responses Could Not Be Verified Was
   Unsupported by Substantial Evidence and Contrary to Law

In addition to being inconsistent with the court's remand instructions, Commerce's determination that plaintiff's separate-rate evidence could not be verified was not supported by substantial evidence, and was contrary to the Department's own regulations.

1. Legal Framework for Verification

The respondent bears the burden of producing evidence of its de facto independence, and Commerce may refuse to consider any information submitted by a respondent that cannot be verified.  *See* 19 U.S.C. §§ 1677e(a)(2)(D), 1677m(e)*; see also Shandong Huarong Mach. Co. v. United States,* 30 CIT 1269, 1295, 435 F. Supp. 2d 1261, 1284 (2006).  Conversely, where a respondent timely provides verifiable evidence in response to Commerce's request, the Department is required, by statute, to consider such evidence.  19 U.S.C. § 1677m(e).

Verification is the process by which Commerce confirms the truth and accuracy of information and materials in a respondent's questionnaires.  *See Bomont Indus. v. United States*, 14 CIT 208, 209, 733 F. Supp. 1507, 1508 (1990) ("Verification is like an audit, the purpose of which is to test information provided by a party for accuracy and

completeness."). Commerce is required, by statute, to verify a respondent's submissions in certain circumstances. *See* 19 U.S.C. § 1677m(i). Where not statutorily required, the Department, by regulation, has the discretion to conduct verification. *See* 19 C.F.R. § 351.307(b)(2) (2011). Here, Commerce was not required to verify Since Hardware's questionnaire responses dealing with its claim for an individual rate; rather, the Department chose to exercise its discretion to conduct this verification.

Pursuant to 19 C.F.R. § 351.307(c), whenever Commerce conducts verification it is required to prepare a verification report, which must contain "the methods, procedures, and results of a verification." In addition, Commerce's chosen method and ultimate findings during verification must be supported by substantial evidence. *Micron Tech. Inc. v. United States,* 117 F.3d 1386, 1396 (Fed. Cir. 1997).

Although unverifiable information may be disregarded by Commerce, generally the Department must make an effort to verify information before it can reasonably be deemed unverifiable. *See China Kingdom Imp. & Exp. Co. v. United States*, 31 CIT 1329, 1340 n.7, 507 F. Supp. 2d 1337, 1349 n.7 (2007).

2. Commerce's Determination That Since Hardware's
Separate-Rate Responses Could Not Be Verified Was
Unsupported by Substantial Evidence and Otherwise
Contrary to Law

As noted, in conducting verification, Commerce found that Since Hardware's responses with respect to two de facto independence criteria – export price setting and proceeds disposition - could not be verified without reference to the company's unreliable accounting records.  For the reasons stated below, the court finds that Commerce's determinations were unsupported by substantial evidence and unlawful.

a. Setting of Export Prices

With regard to how Since Hardware set its export prices, the Department found that the company claimed that it set its export prices based on its production costs and desired profit margins.  Commerce, therefore, found that the company's separate-rate questionnaire responses could only be verified by examining its accounting records, which Commerce determined, and the court found, to be unreliable.  As has been seen, however, Since Hardware's claim that it set its export prices based upon production costs and desired profit margins was only part of its argument that its prices were not set by government actors.  Plaintiff's entire response to the Department's inquiry as to

"how your company sets the prices of the merchandise it exports

to the United States" was as follows:

> Since Hardware directly handled the negotiations with
> the U.S. customers for the sales of subject
> merchandise.  Since Hardware based prices for its
> direct U.S. sales and the U.S. sales through Best
> Unity[6] on the production costs, taking into
> consideration overhead and administrative expenses,
> profit and other expenses incurred during the ordinary
> course of business. . . .  These prices are not
> subject to review by or guidance from any governmental
> organization.

Section A Questionnaire Response at 6-7.  The Department's

question, and plaintiff's answer, were intended to determine how

Since Hardware set its prices, i.e., were the prices subject to

government approval.  Commerce's inquiry was not intended to

determine whether the company kept accurate records of its

production costs, or, for that matter, of its sales.

While the company's accounting of its production costs may

be inadequate to verify its costs of production, plaintiff's

other questionnaire responses indicate that Since Hardware's

prices were set through direct and independent negotiations with

its U.S. customers.  For example, the company explained that

"Since Hardware . . . negotiated directly with [its] customers

through fax, e-mail, telephone and personal meetings."  Section

A Questionnaire Response at 7; *see also* Section A Questionnaire

---

[6]  As Since Hardware explained, and the parties do not dispute,
Best Unity was Since Hardware's Hong Kong affiliate, through
which it dealt with customers that did not want to deal with
suppliers within the PRC.

Response at 13 ("All U.S. sales were made on a transaction-by-transaction basis based upon the purchase orders issued by the U.S. customer."); Section C Questionnaire Response at 26. Indeed, the Department relied on this very type of evidence to verify Since Hardware's independent price setting in the verification report from the First Administrative Review. *See Verification of the Sales and Factors Responses of Since Hardware in the First Administrative Review of Floor-Standing Metal-Top Ironing Tables from the PRC*, A-570-888 (Dep't of Commerce Jan. 22, 2007) (C.R. Doc. 1) (P.R. Doc. 1) at 7 ("The team inquired of [upper level manager] as to how Since negotiates and sets prices, and reviewed an example of price negotiation for a sample sale."). As noted supra, plaintiff has provided documentation tending to demonstrate that its prices were, in fact, set through its direct negotiation with customers.

Commerce did not explain why these materials could not be used to verify Since Hardware's claim that it set its own export prices independently. Indeed, Commerce's determination that plaintiff's claim that it sets its own export prices could not be verified without reference to its unreliable accounting records does not appear to be in accord with the other record evidence.

In addition, Commerce does not explain why it insisted on using the verification procedures from the First Administrative Review rather than developing procedures to verify the evidence produced in this review.  It appears that Commerce's purpose in relying on the earlier procedure was to allow the Department to continue to assume that the unreliability of Since Hardware's accounting records prevented the company from achieving separate-rate status.  As the court held in *Since Hardware I*, however, Commerce has not explained how a finding resting on the accounting records alone is supported by substantial evidence. *See Since Hardware I*, 34 CIT at __, Slip Op. 10-108 at 15-16 ("An examination of the record, however, reveals that none of the unreliable information submitted by the company is relevant to the question of government control. . . . Put another way, the evidence that the company was not controlled by the government . . . is far removed from questions relating to the origin of the factors of production and their cost.").

In light of the foregoing, Commerce's determination that Since Hardware's questionnaire responses concerning how it set its export prices were unverifiable is not supported by substantial evidence.  Further, the Department failed to produce a verification report, apparently believing that its obligation to do so was excused by its determination that Since Hardware's accounting records were unverifiable.  As noted, Commerce is

required by its own regulation to produce such a report.  *See* 19
C.F.R. § 351.307(c).[7]  "It is a familiar rule of administrative
law that an agency must abide by its own regulations."  *See Fort
Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 654
(1990).

Here, rather than producing a verification report, Commerce
relied on the procedures found in a verification report from a
prior administrative review to excuse itself from following its
own regulation.  Specifically, Commerce relied on its
verification report from the First Administrative Review to
establish that Since Hardware's claim that it set its export
prices independently could only be verified by reviewing the
company's accounting records.  Section 351.307(c), however,
requires the Department to provide a verification report setting
forth its verification methodology, its efforts at verification,
and the results thereof, for *this review*.  In other words, the
Department's own regulation instructs it to establish procedures
to verify the evidence produced in each individual review.

It is no doubt true that Commerce may design its own
verification procedures.  "By requiring that Commerce report, on

---

[7]    19 C.F.R. § 351.307(c) is entitled "Verification Report,"
and provides that "[t]he Secretary will report the methods,
procedures, and results of a verification under this section
prior to making a final determination in an investigation or
issuing final results in a review."

a case-by-case basis, the methods and procedures used to verify submitted information, Congress has implicitly delegated to Commerce the latitude to derive verification procedures ad hoc." *Micron Tech,* 117 F.3d at 1397.  Commerce may not, however, adopt the verification procedures from a prior review, and then find that the evidence in a latter review is unverifiable merely because it is different from that produced in the prior review. That is, Commerce's verification procedures must be reasonable under the circumstances presented.  *Id.* at 1396-97; *see also China Kingdom*, 31 CIT at 1340 n.7, 507 F. Supp. 2d at 1349 n.7 ("A deliberate refusal to subject certain factual information to a verification procedure is not the equivalent of a valid finding that . . . such information 'cannot be verified.'").

b. Disposition of Proceeds

Similarly, Commerce's determination that it could not verify Since Hardware's claims regarding its disposition of proceeds cannot be sustained on this record.  Commerce hoped to establish, by its questionnaires, whether the company kept the proceeds from its sales, and made independent decisions on how to use them in operating its business.  In response to the Department's questionnaire concerning the disposition of its sales proceeds, plaintiff claimed that "[t]here are no restrictions on the use of Since Hardware's or Best Unity's

export revenues.  Since Hardware and Best Unity deposit export earnings into their respective bank accounts.  Their general managers have authorized the accounting department to control and to have access to their respective accounts."  Section A Questionnaire Response at 8.  In addition, Since Hardware claimed that the "board of directors determines the disposition of profits" and the company and its affiliates "may use freely all foreign currency earnings on the sale of subject merchandise to the United States . . . .  There are no restrictions on the use of retained foreign currency.  Neither of these two companies is required to sell the foreign currency to the government . . . [and] foreign currency earned on the sale of subject merchandise [is used] to fund its operational expenses."  Section A Questionnaire Response at 9-10.

The Department found that it was "unable to rely upon the statements concerning export proceeds in Since Hardware's separate rate application because such statements are unverifiable on the ground that they rest on Since Hardware's accounting documentation."  Remand Results at 10.  As with its determination with respect to the setting of export prices, this determination was based solely on the Department's purported inability to apply the verification procedures undertaken in the First Administrative Review to the accounting records produced in this review.  *See* Remand Results at 6, 14-15.

The Department maintains that the verification report from the First Administrative Review shows that it verified the questionnaire responses concerning disposition of proceeds by "examin[ing] the individual notification of the payments and transfers to ensure Since Hardware reconciled the 'monies received with the moneys owed' and 'k[ept] track of which customers have paid.'"  Remand Results at 9.  In addition, during the First Review, the Department "examined the production sub-ledgers, and the overhead sub-ledgers, and determined whether Since Hardware accurately documented the amount of money received from export sales."  Remand Results at 10.

As with the determination dealing with the setting of export prices, the methodology the Department chose to employ in the First Administrative review cannot, by itself, support the Remand Results.  In the First Review, there was no determination that Since Hardware's accounting records were unreliable. Accordingly, the Department had no occasion to determine whether there were alternative means for verifying the company's questionnaire responses concerning its disposition of proceeds. In other words, the verification report from the First Administrative Review does not support Commerce's conclusion that reviewing Since Hardware's accounting records is the exclusive means of verifying that it does not dispose of its proceeds at the direction of the PRC government.

Moreover, as with its determination with respect to how the company set its prices, the Department has neither conducted any verification proceedings in this review, nor explained why it cannot use other responses and documents to verify that Since Hardware disposed of its sales proceeds free from government control.  In fact, the Department made no effort to verify Since Hardware's questionnaire responses through other means, such as interviewing management, reviewing internal memoranda and board of directors' meetings, or requesting bank records.  As with the question of how plaintiff set its export prices, how it disposes of its sales proceeds is a question of government involvement, not accurate accounting.  Accordingly, the Department's focus during verification should have been whether Since Hardware's claims regarding the absence of PRC government direction over the company's disposition of proceeds can be verified by reliable and available questionnaire responses and other documentation.

Without undertaking verification proceedings and preparing a report outlining its verification process *in this review*, including a reasoned explanation for why it could not verify plaintiff's questionnaire responses pertaining to its disposition of sales proceeds, Commerce's determination that these responses were unverifiable is not supported by

substantial evidence and contrary to law.  *See China Kingdom*, 31 CIT at 1340 n.7, 507 F. Supp. 2d at 1350 n.7.


CONCLUSION AND ORDER

For the reasons stated, it is hereby

ORDERED that, upon remand, Commerce issue a redetermination that complies in all respects with this Opinion and Order, is based on determinations that are supported by substantial record evidence, and is in all respects in accordance with law; it is further

ORDERED that Commerce, in preparing the Remand Redetermination, shall reexamine its conclusion with respect to whether plaintiff established its de facto independence and is, therefore, entitled to a separate rate, by considering all of the questionnaire responses and documents on the record bearing on this question; it is further

ORDERED that, if the Department continues to find that verification of plaintiff's separate-rate questionnaire responses is necessary, it conduct verification and prepare a report explaining its verification methods, procedures, and findings, in accordance with 19 C.F.R. § 351.307(c).  The Department may not rely solely on the procedures found in the verification report from the First Administrative Review on remand.  To the extent that the Department continues to find

that plaintiff's separate-rate questionnaire responses are unverifiable, its reasoning and the evidence supporting this finding should be set forth in its verification report; it is further

ORDERED that, in the event the Department finds that Since Hardware is entitled to a separate rate, it determine that rate; it is further

ORDERED that the Department may reopen the record to solicit any information it determines to be necessary to make its determination; it is further

ORDERED that the remand result shall be due on May 29, 2012; comments to the remand results shall be due thirty (30) days following filing of the remand results; and replies to such comments shall be due fifteen (15) days following filing of the comments.

                                         _/s/ Richard K. Eaton___
                                          Richard K. Eaton

Dated:     November 29, 2011
           New York, New York